Call the next case please. 18-00-59 Franklin v. Lieberman Management Services Will the attorneys who are going to argue the case please approach the podium. Identify yourselves and the party you represent and indicate to the court how much time you'd like for your argument. Good afternoon, Your Honors. Joe Asher from Deckert, LLP, representing defendant and appellant Lieberman Management Services. I'd like to have 15 minutes for the opening and reserve five for rebuttal, please. You're welcome. Terry Sullivan on behalf of the plaintiffs' appellate, Franklin Friedman, and my co-counsel, Michael Richman, at the counsel's table. How much time to do it? The entire time, 20 minutes? The trap door will open when you spend all your time. What's that? The trap door is going to open as soon as you hit 20 minutes. Okay. Mr. Asher. May it please the court and good afternoon again. We're here on two questions of law for two certified issues under Rule 308. This is an interlocutory appeal, and, of course, the standard on those two issues is de novo review. I don't think there's any dispute about that. The first certified issue is one of statutory interpretation of the Illinois Condominium Property Act, or ICPA. It's Section 22.1c and the related issues associated with Illinois agency law. The second certified issue is whether there is an implied private right of action for property sellers against property management firms under Section 22.1c. These two certified issues are of very real significance to community associations and the property management industry as described in the amicus brief filed by the Community Associations Institute Illinois chapter. Your Honor, there are cases directly on point from Illinois supporting native answers on both certified questions, and I would say, Your Honor, it's just at the outset to the Bohan case on the agency issue, which is this court's decision. The Philips-Bohm case on the agency issue for the Seventh Circuit Court of Appeals and the Murphy and Horst cases on the issue of the implied private right of action. And, of course, there are some cases from the sister state, California, which I'll get to as I go through the argument. The first point I want to make is starting at, I think, what is the right starting point, which is the language of Section 22.1c of the ICPA. It doesn't apply to charges by community association management firms. Quoting, and I'll be short, a reasonable fee covering the direct out-of-pocket costs may be charged by the association or its board of managers to the unit's seller. I believe that Friedman, the plaintiff appellee, must admit that the literal language of Section 22.1c applies only to associations and the boards, and it doesn't apply on its face to management companies. ICPA Section 10 makes clear that community association means one thing and community association manager another. And I'd also cite to Your Honors the discussion of this important issue of the difference between those two sorts of entities, the community association and the management firm, in the Brown decision from Californian. There is no ambiguity in the statute on this point, and that requires application of the plain language of the statute without resorting to consideration of public policy. I've cited the Chicago NSSA limited partnership case and the Citibank case from Illinois. I think that the plaintiff's argument really isn't that the language of Section 22.1c applies to property management firms, but rather I think that the certainty is that it does apply to the property, to the association, and if the property management firm is the agent of the association, then it applies to the property management firm. I think that if we look at both the analysis in the sister states and the state of Illinois law on the agency issue, the answer to both of those modes of analysis are wrong. I make the point that plaintiff, I think, has to admit that if the management company charged the fee to the not-for-profit condominium association, that that association could charge the seller that same amount as its own out-of-pocket expense, and this point was acknowledged explicitly in all three of the California appellate decisions on this issue, and I think the California statute is in all important ways identical to Illinois' on this issue. That would be the Brown, Berman, and Fargo cases. Plaintiff's argument for the management company being liable as the active agent in violating the condominium association's statutory price limitation, if that's what it is, is legally mistaken. To begin with, the management company is not collecting the fees for the association. There's no allegation of that, and that point is acknowledged in the recent California case, the Fowler decision. But even more fundamentally wrong is the misuse of the agency concept and misreading of section 22.1C to make the for-profit management company subject to the no-profit price regulation applicable to the not-for-profit association. I hope I got that right. That error was based primarily on some really very over-broad language on this active part agency theory in the Merrill decision from the Seventh Circuit Court of Appeals, but that decision, which was never binding on this court, has now been proved to be an outlier and a misapplication of Illinois agency law. Phillips-Born is the very recent Seventh Circuit case, and the Beaudon case is the case from this court in this very appellate district. Phillips-Born describes an agent's liability for violation of a principal's duty as a, quote, revolution in the law of agency, end quote. And Beaudon describes the active part agency theory as a, quote, anomaly, end quote, and refused to extend it beyond contractual liability, while indicating clear disapproval, I think, of the concept at all. The general legal rule is that an agent is not liable for a breach of the principal's duties. The restatement third of agency section 7.02 makes that very clear. That's a very old rule of Anglo-American law, in common law, and is the rule in Illinois as well. Of course, the for-profit management firm isn't receiving those section 22.1 charges for the association, but for itself as contractual compensation from the seller for its requested services. And I note that the services are very materially faster than the statutory requirement. It's five days rather than 30 days, which I think for those of us who have been engaged in real estate transactions, realizes that's a very material difference in terms of marketing somebody's condominium. Indeed, plaintiff's order form attached to the complaint as Exhibit B shows an elected rush basis charge of $75. So the plaintiff, in fact, asked for the fastest service and agreed to pay $75 for it. Now, of course, they want it back. There's no good policy reason to impose on a third-party for-profit service provider a drastic price control that applies by statute only to the not-for-profit association. Competition in contracts, not statutory price controls, that's the general rule in this society. Well, in this case, we're not even at the point of imposing price controls. The issue would be, as I see it, whether you can file the claim against the vendor directly or the management company directly. Then the next question would be, if you can do that, then the question is, is the fee charge reasonable, correct? I'm not sure that's right. I think that there is a contractual relationship. The certified question deals with whether the statute either impliedly or directly gives a cause of action to the seller in this circumstance. To the seller against the management company. Right. That's the first question. It's not a question of whether the fee was reasonable or whether there's price controls or anything else. It's a whole separate issue. That's right. So we shouldn't even get into whether it was a reasonable fee or not. It's whether we can even ask the question. That is correct, and I wasn't going to get into whether it's reasonable or not. We're all clear on what the certified question is. We can't get beyond that. We can't get into factual disputes. We can't get into actually the agency situation is muddled as it is because we don't know. That's a fact question. Ultimately. I'm not sure. We have the allegations of the complaint, and the allegation of the complaint is that Reutemann Management Services was the agent of the condominium association. Right, but that's not the certified question. Certified question is, does this statute give the seller a right to go directly against or impliedly against the vendor for providing these documents? Your Honor, if I could just one final clarification. Go ahead. There's two certified issues. Okay. The first one is. Certified questions. Questions. Questions, sorry. Two certified questions. One is whether the management company can be sued under section 22.1C. Right. The second one is whether there's even a private right of action under section 22.1C. Right. So I think that's the distinction I'm trying to draw. I would cite, Your Honor, as to the Berman decision as one of the California cases where they talk about the seller not being a party to the management agreement between the association and the community association management firm. I think that's related to the distinction that Your Honor was drawing. And also to cite to the Murphy and Horst cases from the Northern District of Illinois. So if I could turn now, unless Your Honor is having more questions on whether the agent can be liable for violating section 22.1C. There's also the issue of whether there's even a private right of action for the seller under section 22.1C. And the first point I would make is that there's no express private right of action for sellers under that section. So then the issue becomes whether there's an implied private right of action under section 22.1C. And we do have the advantage of the analysis in those three recent federal cases dealing with copycat, peer-to-peer class actions against other defendants, and all of which found that there was no such private right of action for sellers. And I think with thoughtful and very thorough reasoning. That's the Horst, Murphy, and Arendt cases. It's true that the Arendt case withdrew the opinion waiting for Your Honors to make a decision on it. But I think the analysis is still there in the Horst and Murphy cases. And I think the analysis is persuasive in Arendt too. A private right of action for the seller fails to eliminate full protests for implied rights of action set out in the atonement. Especially in light of the fact that other private rights of action are created under the Condo Act. And the seller or plaintiff is not within the class of persons that section 22.1C is designed to protect. As said to the Arendt and the Nicopolis cases. I'm sure I'm pronouncing that right. On 21C, when the statute provides that the board can only charge a reasonable fee for the documents to the seller, for whose benefit is it? It's for the purchaser and the board. Although the seller is paying it. Although the seller is paying it, that is correct. So why would the legislature say the board can only charge the seller a reasonable fee if they weren't interested in protecting the seller from being gouged by the board? I think the best answer to that is, well, first of all, we've got the Nicopolis case and the Arendt case that both say that the section doesn't have the seller in mind. And that the focus is trying to make sure that the purchaser is informed and that the association has the ability to charge a reasonable fee. So that the other members of the Homeless Association wouldn't be essentially paying for the expense of the specific seller's informational requirements. So that's my answer. But I think that the Horace case says quite clearly that the seller isn't the intended beneficiary of the provision 22.1C as a whole. But if the fee is excessive and the seller is required to pay the fee, how do you get around that the seller would never have a cause of action? If the seller is paying for it, it's excessive, but the seller has no cause of action is what you would argue. I think that is what I realize is that that's not completely intuitive. But I think that in the context of the statute and given the precedence, that the implication of a private right of action here would be, if you take the totality of 22.1C, see if I understand your question properly. If we had a situation in which the association was charging an excessive fee for the documents, would the seller have a cause of action against the Homeowners Association? I think the answer is no, unless it were a breach of the Homeowners Association agreement or the Condor Association agreement. So when the statute says the board can only charge a reasonable fee to the seller, if the board charged in this case, if the board, not the vendor, charged $3,000 for these documents, and the seller is sitting there, he would have no cause of action against the board because the statute says a reasonable fee and a reasonable fee might not be $3,000. The statute itself is permissive in the sense that it allows the board to charge the seller in a way that doesn't create a conflict between the association and the seller. Remember, the seller is a member of the association. The plain language of the statute says the board may charge a reasonable fee. Justice Walker is suggesting if the fee is unreasonable, what's the seller to do? Complain to the Homeowners Association. And not get the documents and not be able to sell the condom because he can't furnish them to the buyer. Well, the Homeowners Association is required to provide the documents. This all started with my question about under the circumstances of the statute in this case, it seems to me at least that there is grounds for the seller to have a complaint, a cause of action against the board if it charges an unreasonable fee to the board, not the vendor, the board. So in this situation, it seems to me that there is a benefit that the legislature wanted to confer upon the seller, protecting the seller from being gouged by the board. Well, if that were the case, Your Honor, and I understand your position, it doesn't mean that there would be a private right of action vis-a-vis the vendor. It doesn't mean that. And we do have cases, that Horace case basically rejects the notion that there would be a cause of action against the vendor. And they did it on the basis of the new implied right of action rather than the agency issue, which was the first issue that I was addressing and I think would by itself compel the dismissal of count one of the complaint. Because if there's no cause of action against the, if there's no duty on the agent to have a reasonable fee or a fee that has no profit in it, which is what the statute actually says, if that were the case, that would mean that count one would be dismissed. So in sum, am I coming up on my 15 minutes? Okay.  Thank you, Your Honor. Well, you can wrap it up. Okay. I'll wrap it up. Okay. I'd like to draw the Court's attention to the eight specific precedents that support negative answers on the two certified issues. Those cases are the three California appellate decisions. They're all cited in your brief. They're all cited in my brief, Your Honor. All right. I'll save it for the reply. Thank you. Ms. Sullivan. Good afternoon. May it please the Court? Again, that's for recording purposes, not amplification. That's right. Your Honors, there's a gap in the statute which Lieberman has identified and uses to take advantage of condo owners when they're most vulnerable. The gap is at the tail end of the real estate transaction. When the condo owner requests disclosure documents from the management agent of its association and closing is just a matter of days away, the property management companies know two things. They know that the owner has a statutory duty to provide these documents to the buyer or the buyer can walk away from the sale or they can even sue later if the documents are deficient. And they also know that the owner is on their way out of the door. And that any protection that's been conferred on the owner by the association's board of directors or managers has a fast approaching expiration date. So given the realities of how these real estate transactions work, coupled with the fact that the property management companies such as Lieberman are in control of these documents, Lieberman holds these documents over the heads of condo owners just to see how high they'll jump. Maybe it's 400, maybe it's 1,000. But doesn't Lieberman have, doesn't the management company have a contract or an agreement with the association? And I know what you're saying, the seller's going to be gone. But pretty much everybody's going to be a seller. So they all have a vested interest in this relationship and in this issue at some point. So isn't it up to the association, the condo association, homeowners association, to exercise their fiduciary duty and protect the people that they have a fiduciary duty to? Absolutely, I would say yes. But my response to that is that the association, plaintiff isn't challenging the delegation of the statutory duty to provide disclosure documents. What plaintiff is challenging is the unreasonable fee. Also, the association or the board of managers, I would say, although yes, they would potentially all become sellers at some point, the fees that are charged to condo owners when they're selling are not disclosed until the request is actually made. What obligation is there for the management company to disclose or to turn over the documents? The fact that they actually assume the statutory duty to provide these documents to the condo owners. Where is that in evidence? In the record? Right. How do we know that they assumed this duty? We know that they assumed the duty because Lieberman is the party that provided the documents to, in this case, to the plaintiff. Right. But where did they have a duty to provide the documents? What duty was imposed upon them? There was no duty that was imposed on Lieberman. Lieberman... The duty is in the agreement. I would say... The agreement between the association and Lieberman. I would say that they're able to assume, voluntarily assume this duty by the management contract that's written broadly. That's where this is going, going back to the management contract. And then the question becomes, what gives the seller a right to sue the management company? It seems that the seller's challenge is really with the association. The seller didn't sue the association. Or the association could sue the management company for the excessive fees. So that's where I need to pause. That's where we're all lost. Yeah. Why wasn't the board of directors a party to the suit? Why isn't the complaint from the seller against his board? So the association is not the party that provided these documents to the condo owners, or to the condo sellers. The association is not the party that set the fee. The association is not the party that collected the fee. All that was done voluntarily by Lieberman itself on its own court. And in fact, Lieberman states in its opening brief that the fees charged to provide its professional services were earned by Lieberman on its own behalf. And really, even if the association was added as a party, we would still need to find an implied cause of action because the statute does not expressly provide one. Does it provide one what? A cause of action or express cause of action against the association or the management company. But it does provide the obligation for the association to provide these documents. Absolutely. And the Condo Act allows a delegation of this statutory duty to a property management company such as Lieberman. Lieberman, there's no duty that's imposed on Lieberman that it hasn't already imposed on itself. It doesn't have to provide these documents. It chooses to. So you're saying that Lieberman voluntarily assumed this action to furnish the documents for a fee? Yes. So now they're being sued for something they voluntarily undertook and that the seller voluntarily paid in return for production of the documents. I would say that the seller, as the voluntarily paid, the seller has no other choice but to pay the fee that's set by Lieberman. Could the seller go to the board and say, I want all these documents? Yes, they could. Did the seller do that in this case? The plaintiff in our case was directed to the property management company. So the seller asked the board for the documents? Yes. And that's in the complaint? I believe so. I can double check the complaint. Okay, let's assume you're right. And the board said go talk to Lieberman. To Lieberman. Lieberman has assumed this duty to provide the disclosure documents. This is a duty voluntarily assumed? Voluntarily assumed. This is voluntarily assumed. Isn't this pursuant to the agreement that the board has with the management company, though? It's not voluntarily assumed. Yeah, but it's pursuant to the terms of an agreement, correct? By virtue of the agreements of their management contract, they can assume this duty. Yes, so let's be clear about that. It's not something they're just doing graciously. They have an agreement with the board to provide these documents to unit owners, correct? It's not expressly written into this particular contract, but by virtue of the various duties, it's written broadly so that really they can assume as many duties or as little duties as they want. They don't have to assume. So they collect assessments. They manage these documents. They charge late fees and they do all the things that a management company would do. Absolutely. And part of that is to provide the documents to a party selling property, correct? They choose to do that. They don't have to. They manage these documents, all these disclosure documents, for the association. But the actual voluntary duty that they voluntarily assumed is to provide the documents to condo owners. I'm also just confused with this condocerts.com. How do they figure in? Because that's what Lieberman tells the seller to do, right? Yes. So with the condocerts, condocerts is, I guess, an agreement or an arrangement between Lieberman and condocerts individually. The association's board of managers had nothing to do with that arrangement. That is not something that the board of managers had anything to do with. That was independently done on Lieberman's own behalf. But condocerts isn't independent either. No. And we don't know what they're getting paid. No, we don't. Condocerts is not the party that the board of managers hired to provide the documents. So that, like I said before, that was a contractual arrangement between Lieberman and that agent. But you said it wasn't in the contract, though, right? At the condocerts? No, that is not, that wasn't anticipated. Even the providing the documents at closing for sellers, that wasn't part of the contract expressly in the contract? Not expressly, yeah. I believe that the contract is written broadly enough that it can, that Lieberman can choose to assume a number of duties, and they do, which includes the statutory duty to provide disclosure documents for a reasonable fee to condo owners who are selling their homes. So if I was a seller and I wanted my designated documents and I went to Lieberman and they said it's $250, I said I'm not paying $250. If you said that you were not paying $250, you would not get your documents? From Lieberman. From Lieberman. Right. So my recourse at that point was either lose the sale or go to my board of managers and say I want my documents. And the board of managers under the statute have a duty to get them for me. And if it costs them a reasonable, would cost them anything, they can charge me that fee, right? Assuming that they can provide, that the association's board can provide the documents because, you know, they have access and they've been managing these documents themselves, maybe then they could provide the documents. But the reality of the situation is that if you went back to the board and said, you know, I don't want to pay $250 for these documents, they would say, well, you know, that's their fee. We didn't set the fee. We're going to kick it back to the management company, and you can duke it out with them. If I hired your firm to represent me, I would expect you to tell the board not my problem. It's your problem to give me the documents, to give the seller the documents. Obtain the documents and furnish them within 30 days, right? That's what the statute provides. Yes. Yes. And if they fail to do that, the seller's complaint would lodge against the board of directors for failing to comply with the statute. I fail to see how, in that scenario, that the seller would also have a cause of action against the management company for not providing the documents for a fee. I think that because the disclosure documents are generally requested at the tail end of this transaction, the fees for those documents are not going to be disclosed, as I've said before, until then. And plaintiffs really can't complain to their board because they're no longer members of the association. Let's say they haven't sold the property yet. Okay. So if we're in the, I guess, the timeline where they are very close the day before and we still haven't. They're still on the road. We would be expecting the seller to put the transaction on hold while we figure out who will provide them the documents for the. If the sale goes up, the seller would look to the board for blowing up the deal. Because the board, under the statute, has the obligation to furnish the required documents. I see nothing in that 21C that says the management company has the obligation to provide the documents. So when the management company does not provide the documents, how does the seller have a cause of action against the management company? That's where we need your help. Well, in this case, the association did not provide the documents. The duty was assumed by Lieberman. Okay. But answer Justice Walker's question. Because you're here on a certified question of law that doesn't necessarily deal with your case in particular. It's the law generally. So that's why Justice Walker asked that question. Can you repeat the question? Sure. I think we all want to understand how does the seller have a cause of action against Lieberman if Lieberman has no obligation, as you've stated, to provide those documents? Because Lieberman voluntarily assumed this duty to provide the documents. That's why it didn't have to provide these documents. It voluntarily agreed to do so because they can make money from it. That's why. We can only get these documents. So I want to come back to Justice Pierce's question. Yeah. So if they don't provide the documents, then the seller has a right to go back to the board and ask the board for the documents, at which time the board would then have 30 days to produce the documents. I would say that the request, the start date would be when the condo owner first requests the documents. Right. 30 days. 30 days. They could exercise, I guess, their right to provide the documents. The association could within 30 days. But I think, practically speaking, that wouldn't happen. So if Lieberman is under no obligation to provide the documents, and they decide we're not going to provide the documents, if we do, we'll help you, but for profit, we're going to charge you $1,000 to get these documents. Then the seller says, no, that's okay. I don't want the documents. I'll get them from the board. So it goes back to the board. Now, if the board refuses to give the documents, we agree, I think we all agree, that the seller would have a cause of action against the condominium board. What we want your help with is how do you get to the seller having a cause of action against Lieberman because they didn't do something they're not required to do in the first place? Well, and my answer to that, I guess, remains the same, is that they do have an obligation. They assumed that duty to provide the documents to the condo owner. That is their duty. They felt they were doing what? Some sort of an agency relationship? Because that's the only way we get there. That's the only way. And we'll get back to the arguments that were made about agency relationships. Yes. The only way that they are able to even have control of disclosure documents is by virtue of their relationship with the association's board of managers, their contract agreement. So your argument, then, is that they are an agent of the board. Absolutely. And as an agent of the board, they are charging an excessive fee. And because they're the agent of the board, they're charging an excessive fee. That gives you the cause of action. Absolutely. And that's why we cited to the case of Merrill in our briefs and relied on that case. Okay. Now, according to, well, according to counsel, there's at least three decisions from California public courts which says that that's just not the case, that that's not the way agency law works. So the California cases don't assist us in answering the questions because they address a different question. And that's my understanding of reading those cases, is that their reliance is misplaced because plaintiff has never alleged that Lieberman's fees for disclosure documents can't include a profit margin. We've never said that it can't. So plaintiff is just arguing that the fees must be reasonable. And Lieberman hasn't denied that it voluntarily assumed this duty to provide documents for a reasonable fee. And if it's using these California cases for the argument that it has separate duties under the Condo Act, I think that that's undermined by the definition of a management company under the Illinois Condo Act, which says that a management company is an entity that transacts business on behalf of others as agent for a unit owner, unit owners or association of unit owners for the purpose of carrying out the duties for the day-to-day operation and management of any property subject to the Condo Act. So Lieberman is really a statutory agent that's empowered to act on behalf of the owners. They are able to assume this statutory duty by virtue of their relationship with the association's unit owners. So really, I think that Lieberman's use of these cases is really just an attempt to keep condo owners trapped in this statute's gap by evading the issue of liability as an agent so that it can continue charging whatever fee it wants, paying no regard to the restrictions of the statutory duty that it voluntarily assumed. That section of the Act you just read, what section was that? So that is section 18G, and it defines, that provides a definition of a management company. And I will note that management company is not in the definition section of the Condo Act. This is in a different section where property management company is defined. Different section of what? Section 18G. That is not the definition section of the Condo Act. What is it from? 18G, I believe, of the condo. It's not in the definition section. Yeah, not in the definition section, but it is located in section 18G. And, Your Honors, I'd like to go back to the implied cause of action issue. The legislative history aids this court in determining legislative intent of section 22.1. Courts consult with legislative history for reasons other than resolving ambiguity in the statute, and it's regularly used to determine legislative intent. But courts have used, even though they don't, I guess, find ambiguity in a section, the courts look to legislative history to determine the intent regarding protection for buyers against sellers, such as in the case of Dottomo and Nicoletti and Nicolopolis. However, I will say that in our case, what the federal opinions didn't do was actually look to the legislative history to determine whether or not a seller or an owner can bring a cause of action against a property management company or its association. The cases that deal with an implied cause of action have only dealt with a buyer's action against the seller. So under the four-factor test that's set forth in Nicolopolis, owners are a protected class under the statute because they're consumers. They also have a statutory duty to provide these documents to their buyers. And the legislative history of the Condo Act states that the purpose was to provide a uniform regulation while providing the ultimate amount of consumer protection. And I believe that the term ultimate is indicative of how robust the legislature intended the consumer protection to be. And an implied cause of action is also consistent with the purpose of the statute, which is to encourage seller disclosure while providing the ultimate amount of consumer protection. And there's no reason why this court should not also find an implied cause of action for owners who are selling their homes in this case to protect them from price gouging, price gouging schemes by the property management company or even the association's board of managers. There needs to be a party that enforces the reasonable fee language of Section 22. Again, that's not what we're struggling with. I don't struggle with the implied cause of action. I agree with you. Let me start with that. I agree with you that there's got to be an implied cause of action. But where the problem comes in is how is that cause of action against Lieberman? So please, help us with that. The cause of action is against Lieberman because Lieberman voluntarily assumed a statutory duty to provide disclosure documents. And it cannot just choose to not, like the hypotheticals that we were just discussing, to not provide the documents. Lieberman has been managing these documents as well. It's not just about providing. The duty to provide documents is an independent duty that Lieberman did not have to assume if it chose not to. I think your time is pretty close to expired. Okay. Anything else you want to wrap up? No. Just in conclusion, I urge this Court to just close the gap that has allowed Lieberman to abuse conduct owners with fees under the false presumption that those fees can't be challenged, and answer both the certified questions in the affirmative, and remand the case back to the trial court for further proceedings. Thank you. Mr. Escher, briefly? I'll be fast. I knew I would need these binders eventually. The first point I want to make is that the statute 22.1c is, it seems like it is, although it's framed permissively as what the association can do, it refers to a reasonable fee covering the direct out-of-pocket costs. So the distinction offered by the plaintiff appellee between a reasonable fee and a fee that only covers your direct out-of-pocket costs is not a correct statutory interpretation. It's a reasonable fee covering the direct out-of-pocket costs. The next point I want to make, and it's... So it sounds like it's saying that even if it's out-of-pocket costs, it still needs to be reasonable. I think that's right. You think that's right? I think that's right. Okay. I think it's right. Maybe I haven't thought it through all the way, but that's my take on it. My opponent said that there is an allegation in the complaint that we asked the board first for the information and they wouldn't give it to us or something along those lines. That's the board of the Condominium Association. And I think if you look at the actual complaint and the First Amendment complaint, that allegation isn't in there at all. I'm looking at the substantive allegations of the First Amendment complaint, paragraphs 13 through 23, and I think it's not there. I know it's a little bit of wishful thinking on our part. I don't think it's a critical point, but it isn't in the allegations of the complaint. One of the issues that I think that the court is struggling with, and it's just my take on it, is this notion of whether the appropriate thing to do if the seller thinks they're being overcharged for the documents, that the remedy is to go to the board of the Condominium Association. And that point is recognized very explicitly in the Northern District of Illinois case, the Murphy case, where they make the point, and I'll read my reference, be very short. Quote, Plaintiffs could have raised the issue with the board and made clear that they objected to the board's delegation of this responsibility. Plaintiffs could also pursue other legal remedies against the associations themselves for breach of any duty owed to the plaintiffs. Finally, plaintiffs could have passed on some of the costs of obtaining the documents to the purchaser who benefited from the seller's prompt disclosures. They go on to conclude that there's no implied right of action under these circumstances. I understand Justice Walker is skeptical about that conclusion. Right, but there's still the first conclusion about whether 22.1C even applies to the management company to begin with. And the central problem with the plaintiff's syllogism is that they have to rely on this notion of agent liability. And they say, well, they're an agent, and so they take on the responsibilities of the principal. But that's what they're saying. But the problem is that that's not consistent with agency law. The general rule is an agent isn't responsible for breaches of the principal's duties. And we cited to that in our briefs from the receiving third agency. And we've also got that same point being articulated in the Bovan case from this court that basically said, we are really suspicious about this act of pro-agency theory. It might be completely wrong, which I think is consistent with the Seventh Circuit's recent disapproval of the Merrill case, but that under no circumstances are we going to take that from contract to tort. And of course, there's no breach of contract claim here. It's a statutory claim under 22.1C. And because we're the management company, it doesn't apply to us, and you can't drag us in on the basis of an agency theory under Bovan or the other cases that we've cited. I think that's all I've got, unless Your Honors have some more questions. Well, thank you very much. Thank you. Thank you. Thank you to both sides for your extensive briefing on this issue. Thank you.